IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ROBIN D.P.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:21-cv-01160-JES-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9), the Commissioner's Motion for Summary Affirmance (Doc. 11), and the Plaintiff's Reply (Doc. 12). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Robin D.P. filed an application for disability insurance benefits (DIB) on May 10, 2019, alleging disability beginning on December 1, 2018. His DIB claim was denied initially on November 7, 2019 and upon reconsideration on April 29, 2020. After a request for hearing before an administrative law judge, a hearing was held on November 17, 2020 before the Honorable David W. Thompson (ALJ) at which time Robin requested to amend his alleged onset date to December 28,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

2018.  At the hearing, Robin was represented by an attorney, and Robin and a vocational expert (VE) testified.  Following the hearing, Robin's DIB claim was denied on January 19, 2021.  His request for review by the Appeals Council was denied on April 1, 2021, making the ALJ's Decision the final decision of the Commissioner.  Robin timely filed the instant civil action seeking review of the ALJ's Decision on May 22, 2021.

## II

Robin challenges the ALJ's Decision for the following reasons:  1) the ALJ failed to include mental limitations he found credible in his residual functional capacity finding or explain why he was omitting these credible limitations; and 2) the appointment of Andrew Saul as a single Commissioner of SSA who was removable only for cause and would serve a longer term than that of the President violated separation of powers such that the Decision in this case by an ALJ and Appeals Council judges who derived their authority from Mr. Saul is constitutionally defective.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).  Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

3

> 5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) .

In the instant case, Robin claims error on the ALJ's part at Step Four.

### A

At Step One, the ALJ determined Robin had not engaged in substantial gainful activity since December 28, 2018, the alleged onset date. AR 17. At Step Two, the ALJ determined Robin had the following severe impairments: pseudogout; degenerative joint disease of the left knee status post surgical replacement; degenerative disc disease of the cervical, thoracic, and lumbar spine; and essential hypertension. AR 18. At Step Three, the ALJ determined Robin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 19. At Step Four, the ALJ made the following residual functional capacity (RFC) finding: "[T]he claimant has the RFC to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds." AR 20. The ALJ determined, based upon the VE's testimony, that Robin was capable of performing his past relevant work as an accounts payable bookkeeper and a motorcycle sales person and the work did not require the performance of work-related activities precluded by

Robin's RFC. AR 23. Accordingly, the ALJ determined Robin had not been under a disability from December 28, 2018 through the date of the Decision. AR 24.

## B

Robin states that under SSA policy, and as recognized by the ALJ in his Decision, it is unquestionable that an ALJ must account for all of the functional limitations caused by both a claimant's severe and non-severe impairments, and it is beyond dispute that mental limitations found credible at Steps Two or Three are functional limitations that must be considered in assessing the claimant's RFC. Thus, Robin argues that where the ALJ found at Step Two that he had "mild" limitations in three of the four broad functional areas of mental functioning set forth in the regulations and listings for mental disorders ("paragraph B" criteria) – interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself – the ALJ was required to but failed to perform a more detailed assessment as to those "mild" limitations when formulating the RFC. The Commissioner counters that Robin has shown no error in the ALJ's consideration of his mental impairments, arguing that Robin incorrectly seems to think that the found "mild" limitations automatically translate to work limitations due to mental impairments. The Commissioner says the ALJ more than sufficiently articulated and supported his finding that no mental limitations were necessary in the RFC.

At Step Two, the ALJ considered Robin's medically determinable mental impairments of depression and anxiety and found they did not cause more than minimal limitations in his ability to perform basic mental work activities, whether considered singly or in combination, such that they were non-severe. After setting forth the evidence he considered in finding "mild" limitation in three of the four "paragraph B" criteria, the ALJ explicitly stated:

5

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

AR 19. The ALJ's application of the psychiatric review technique and his ultimate determination at Step Two that Robin's mental impairments were non-severe are not contested and are, in fact, above reproach. The ALJ's *statements as to his responsibility* to rate the severity of Robin's mental impairments at Steps 2 and 3 *versus his responsibility to assess them with more detail* at Steps 4 and 5 is accurate. But from there he faltered per 20 C.F.R. § 404.1545 and SSR 96-8p.

20 C.F.R. § 404.1545(a)(2) provides that an ALJ will consider all of a claimant's medically determinable impairments, including those that are not "severe" when the ALJ assesses the claimant's RFC. SSR 96-8p provides that the mental RFC assessment at Steps 4 and 5 requires "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments" and which are summarized on the Psychiatric Review Technique Form used at earlier steps. SSR 96-8p at *4. After finding, at Step Two, that Robin's mental impairments were non-severe and finding "mild" limitation in three of the four "paragraph B" criteria, the ALJ's Step Four RFC finding was devoid of any mental functional limitations and his articulated assessment was silent as to how he considered Robin's mild limitations for purposes of the RFC.

At Step Four, the ALJ only went so far as to note Robin alleged disability due to anxiety and depression, to mention that a doctor noted he had only treated Robin for anxiety which was controlled by medication, to note Robin's primary

care provider indicated he treated Robin for anxiety and Robin had no clinical symptoms at the time the medical opinion was drafted, and to note that he was granted a 50% VA disability rating based on anxiety. The bulk of the ALJ's RFC assessment was focused upon the evidence pertaining to Robin's physical impairments. Nowhere in the RFC assessment did the ALJ provide an assessment, let alone a "more detailed assessment," as to why the "mild" mental limitations were not reflected in his ultimate RFC finding.

Indeed, as Robin points out, there is clearly a difference between "mild" and "none" which the ALJ himself recognized by assigning "no" limitations to Robin's ability to understand, remember, or apply information. *See* 20 C.F.R. § 404.1520a(c)(4) ("When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme"). To the extent the ALJ determined Robin's "mild" limitations did not necessitate accommodation in his RFC, the ALJ was required to sufficiently articulate *how* and *why* he made that determination. Not only was that articulation required by SSR 96-8p at Step Four, but it was also necessary pursuant to the ALJ's obligation to "sufficiently articulate his assessment of the evidence to assure [the reviewing court] that the ALJ considered the important evidence . . . and to enable [the reviewing court] to trace the path of the ALJ's reasoning." *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). So it is not enough for the Commissioner to say mild ratings do not inevitably require accommodation in an individual's RFC. That may be, but the accommodation omission must be explained.

Because the ALJ failed to explain the accommodation omission, the Court is simultaneously unconvinced that the ALJ considered the combination of all of Robin's limitations – severe and non-severe – as required. The ALJ's silence as to Robin's mild limitations as to his mental impairments and their non-severity after Step Two can only be perceived as the ALJ's failure to consider "the aggregate effect of [the claimant's] entire constellation of ailments." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (faulting the ALJ for failing to consider the total effect of all the claimant's medical problems, "including those impairments that in isolation are not severe"). It is not enough that the Commissioner says that in the ALJ's RFC analysis he noted Robin's anxiety was controlled with medications, he relied on the opinions of three psychologists, and he reiterated that Robin's mental impairments were not severe. If anything, it appears the ALJ used his non-severity finding at Step Two as a basis to reject the possibility that Robin's mental impairments caused any limitation whatsoever. *See, e.g.*, AR 23 ("The undersigned finds the claimant's allegations are not consistent with the medical evidence, particularly in that . . . his anxiety and depression are not severe . . . .").

As for the ALJ's concluding sentence at Step Two, that the "following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," that does not remedy the ALJ's error at Step Four. The Court agrees with other courts in this circuit that have found such language at Step Two causes confusion. In *Muzzarelli v. Astrue*, the Northern District of Illinois court explained:

> It is unclear what the ALJ meant by saying that the RFC "reflects" his Step 2 findings concerning [claimant]'s mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions.

8

No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011); *see also David K v. Kijakazi*, No. 20-cv-1743, 2022 WL 2757695, at *4-5 (N.D. Ill. July 14, 2022) (quoting *Muzzarelli* and similarly finding indiscernible "what the ALJ meant by her statement that the RFC analysis reflects the degree of limitations she found in her discussion of the paragraph B categories"); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) (noting that courts in the Seventh Circuit have found the language at the end of Step Two causes confusion). While the Court may read an ALJ's Decision as a whole, the Court finds it inappropriate to do so here in order to find the ALJ's discussion at Step Two as satisfying his obligations at Step Four. *Compare Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (stating it is proper to read the ALJ's decision as a whole). The ALJ was specifically tasked with providing a more detailed assessment at Steps Four and Five pursuant to SSR 96-8p.

The Court cannot say the ALJ's error was harmless where the ALJ determined Robin could perform his past, skilled work. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). Without explicitly and properly assessing why he did not include any mental limitations in the RFC, the ALJ did not sufficiently support his finding that Robin retained the mental capacity to perform his past skilled work as accounts payable bookkeeper or motorcycle sales person. *See* 20 C.F.R. § 404.1568(c) (providing that "[o]ther skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity").

9

C

Because the Court has already determined the ALJ committed legal error that warrants remand, the Court need not address Robin's constitutional argument. The Court notes, however, that Social Security claimants' separation of powers arguments such as the one Robin makes have in the last several months repeatedly been rejected by federal courts throughout the country. *See, e.g.*, *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) ("In sum, we hold that the removal provision in 42 U.S.C. § 902(a)(3) violates separation of powers; that the provision is severable; and that, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case. Because Claimant has not shown actual harm, we uphold the Commissioner's decision"); *Green v. Kijakazi*, No. 21-C-678, 2022 WL 1644936, at *25 (E.D. Wis. May 23, 2022) (finding claimant was not entitled to remand on argument that statute which provides Commissioner of Social Security can only be removed for cause violates separation of powers); *Linnear v. Kijakazi*, No. , 2022 WL 1493563, at *10 (S.D. Ga. May 11, 2022) (finding the claimant was not entitled to remand on the basis that the President's restriction on removal of the Commissioner of Social Security violated separation of powers). In fact, the separation of powers argument made by Robin's counsel in this case has been rejected in at least one other case. *Susan V. v. Kijakazi*, No. 21cv364, 2022 WL 2982925, at *5-7 (D.N.M. July 28, 2022).

IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 11) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on August 4, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE